UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

CARLO W. PETRUSA,                                    **MEMORANDUM**
                                                     **AND ORDER**
                        Plaintiff,      05-CV-6017 (DRH)

    -v.-

SUFFOLK COUNTY SOCIETY FOR THE
PREVENTION OF CRUELTY TO ANIMALS,
GERALD LAUBER, ROY GROSS, LOIS
GROSS, HERBERT KELLNER, and DAVID
RAMOS,

                      Defendants.

----------------------------------------------------------X

**Appearances:**

**For the Plaintiff:**
**Perry and Campanelli, LLP**
129 Front Street
Mineola, New York 11501
By:    Andrew J. Campanelli, Esq.
        David H. Eisenberg, Esq.

**For the Defendants:**
**Kaufman Borgeest & Ryan, LLP**
50 Route 111
Smithtown, New York 11787
By:    Joan M. Gilbride, Esq.
        Leonard B. Cooper, Esq.

**HURLEY, District Judge:**

        This civil rights action arises out of the termination of a volunteer position with a private, not-for-profit organization. Plaintiff Carlo W. Petrusa ("Plaintiff") asserts that the termination resulted in a deprivation of a constitutionally protected property interest and violated his rights to due process and free speech. Defendants Suffolk County Society for the Prevention

of Cruelty to Animals ("SCSPCA"), Gerald Lauber, Roy Gross, Lois Gross, Herbert Kellner, and David Ramos (collectively, "Defendants") move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6). For the reasons that follow, Defendants' motion is granted and this case is dismissed in its entirety.

## *BACKGROUND*

The following facts are taken from the Complaint and are presumed true for purposes of this motion.

Defendant SCSPCA is a private, not-for-profit corporation existing under the laws of the State of New York, with its principal place of business in Smithtown, New York. (Compl. ¶¶ 17, 29.) Defendants Gerald Lauber ("Lauber"), Roy Gross, Lois Gross, Herbert Kellner ("Kellner"), and David Ramos ("Ramos") (collectively the "individual defendants") are Directors on the Board of Directors of the SCSPCA, and each resides in New York. (*Id.* ¶¶ 18-28.) In September 1999, Plaintiff began providing volunteer services to the SCSPCA as a civilian investigator. (*Id.* ¶ 40.)

In an effort to become an agent of the SCSPCA, Plaintiff authorized the SCSPCA to conduct a formal investigation of his background, and he completed formal training programs at his own expense. (*Id.* ¶¶ 41-45.) Upon completion of the background investigation and required training programs, in July 2001, Plaintiff was promoted to the rank of criminal investigator for the SCSPCA, thereby becoming an agent and peace officer. (*Id.* ¶¶ 46, 49-50.) Plaintiff purchased at his own expense the necessary equipment required of an agent. (*Id.* ¶¶ 47-48.) Plaintiff was thereafter promoted to the rank of detective and ultimately to the rank of sergeant. (*Id.* ¶ 51.)

At various times, Plaintiff raised objections "to various malfeasances undertaken, or contemplated by the directors of the agency." (*Id.* ¶ 72.) For example, Plaintiff objected to an SCSPCA director instructing that the results of a written firearm examination be altered. (*Id.* ¶¶ 73-74.) Following such objections, several of the individual defendants "became agitated." (*Id.* ¶ 74.)

By letter dated March 15, 2004, defendant Lauber, chief of detectives of the SCSPCA, informed Plaintiff that the SCSPCA had received reports that Plaintiff had allegedly made "negative comments" to other officers concerning the SCSPCA and requested that Plaintiff respond in writing within the week to the allegations. (*Id.* ¶ 52; Ex. E.) Plaintiff promptly responded to the letter. (*Id.* ¶ 53.) Lauber sent a second letter, dated March 24, 2004, wherein he advised Plaintiff that he was going to recommend to the Board of Directors that Plaintiff be demoted in rank. (*Id.*; Ex. F.) In a third letter dated April 1, 2004, Lauber informed Plaintiff that based on his failure to respond to the request for information concerning his alleged statements to other officers, he was reducing his rank to detective. (*Id.* ¶ 54; Ex. G.) On April 7, 2004, Plaintiff made a formal request, through counsel, for a statutory hearing. (*Id.* ¶ 55; Ex. H.)

Defendants did not provide the requested hearing. (*Id.* ¶ 56.) On April 12, 2004, the SCSPCA disseminated two internal memoranda announcing the termination of Plaintiff and directing Plaintiff to return his shield, I.D., equipment and all agency papers. (*Id.* ¶¶ 57-59; Exs. I, J.)

On December 23, 2005, Plaintiff commenced the instant action pursuant to 42 U.S.C. §§ 1983, 1985 and 1988, seeking equitable relief in the form of reinstatement to his former position with the SCSPCA, as well as punitive damages, costs and attorney's fees. The

Complaint asserts three claims. First, Plaintiff seeks relief pursuant to Section 1983, alleging that he possessed a property interest in his volunteer position in the SCSPCA and that Defendants violated Plaintiff's due process rights under the Fifth and Fourteenth Amendment of the United States Constitution when they terminated Plaintiff's volunteer employment without notice and an opportunity to be heard. (Compl. ¶¶ 60-70.) Next, Plaintiff alleges that Defendants conspired to violate Plaintiff's civil rights under the First, Fifth, and Fourteenth Amendments of the United States Constitution by effectuating a de facto expulsion without notice or a hearing. (*Id.* ¶¶ 71-81.) Finally, Plaintiff alleges that Defendants violated his First and Fourteenth Amendment rights by retaliating against Plaintiff for having made negative comments about the SCSPCA and for having requested a statutory hearing. (*Id.* ¶¶ 82-89.)

Defendants now move to dismiss the Complaint under Rule 12(b)(6) contending principally that Defendants' employment decision to terminate Plaintiff's volunteer position does not constitute state action for purposes of § 1983. Alternatively, Defendants argue that assuming arguendo that the SCSPCA's actions were considered to be effected under color of state law, (i) Plaintiff's de minimus property interest in his volunteer position is not entitled to constitutional protection; and (ii) Plaintiff's constitutional rights were not violated because the termination was effected for a proper reason. Additionally, to the extent that the Court finds that the SCSPCA is a state actor, (i) Defendants Roy Gross, Lois Gross, Kellner and Ramos move to dismiss the claims against them in their individual capacities asserting that the Complaint fails to allege their personal involvement in the alleged constitutional violations; and (ii) the individual Defendants move to dismiss the claims against them in their individual capacities maintaining that they are entitled to qualified immunity.

4

## DISCUSSION

### I.  *Standard of Review*

Rule 8(a) provides that a pleading shall contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Supreme Court has recently clarified the pleading standard applicable in evaluating a motion to dismiss under Rule 12(b)(6).

First, in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Court disavowed the well-known statement in *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957) that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." 550 U.S. at 562. Instead, to survive a motion to dismiss under *Twombly*, a plaintiff must allege "only enough facts to state a claim to relief that is plausible on its face." *Id*. at 570.

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Id.* at 555 (citations and internal quotation marks omitted).

More recently, in *Ashcroft v. Iqbal*, -- U.S. --, 129 S. Ct. 1937 (2009), the Supreme Court provided further guidance, setting forth a two-pronged approach for courts deciding a motion to dismiss. First, a court should "begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." 129 S. Ct. at 1950. "While legal conclusions can provide the framework of a complaint, they must be

supported by factual assumptions." *Id.* Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 1949 (citing *Twombly*, 550 U.S. at 555)).

Second, "[w]hen there are well-pleaded factual allegations a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* at 1950. The Court defined plausibility as follows:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"

*Id.* at 1949 (quoting *Twombly*, 550 U.S. at 556-57) (internal citations omitted).

In deciding a motion to dismiss pursuant to Rule 12(b)(6), a court must look to the allegations on the face of the complaint, but may also consider "[d]ocuments that are attached to the complaint or incorporated in it by reference." *Roth v. Jennings,* 489 F.3d 499, 509 (2d Cir. 2007). *See also Gillingham v. GEICO Direct*, 2008 WL 189671, at *2 (E.D.N.Y. Jan. 18, 2008) (noting that a court considering a motion to dismiss "must limit itself to the facts stated in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint") (citation and internal quotation marks omitted).

## II.  Section 1983 Claim

Section 1983 provides:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . , subjects, or causes to be subjected, any citizen of the United States . . . to the

6

> deprivation of any rights, privileges, or immunities secured by the
> Constitution and laws, shall be liable to the party injured in an
> action at law . . . .

42 U.S.C. § 1983. The Supreme Court has stated that "[t]he purpose of § 1983 is to deter state actors from using the badge of their authority to deprive individuals of their federally guaranteed rights and to provide relief to victims if such deterrence fails." *Wyatt v. Cole*, 504 U.S. 158, 161 (1992).

As discussed below, Plaintiff's §§ 1983 and 1985 claims against the Defendants fail as a matter of law because (i) none of the Defendants are state actors; and (ii) Plaintiff's conclusory allegations that the Defendants conspired with each other to interfere with his civil rights cannot withstand a motion to dismiss.

### A. *State Action Requirement*

"A plaintiff pressing a claim of violation of his constitutional rights under § 1983 is . . . required to show state action." *Tancredi v. Metropolitan Life Ins. Co.*, 316 F.3d 308, 312 (2d Cir. 2003); *see Rendell-Baker v. Kohn*, 457 U.S. 830, 838 (1982); *see United States v. International Bhd. of Teamsters*, 941 F.2d 1292, 1295 (2d Cir. 1991) ("Because the United States Constitution regulates only the Government, not private parties, a litigant claiming that his constitutional rights have been violated must first establish that the challenged conduct constitutes state action") (internal quotation marks and citation omitted). The purpose of the state action requirement is not only to "preserv[e] an area of individual freedom by limiting the reach of federal law and avoi[d] the imposition of responsibility on a State for conduct it could not control . . . , but also to assure that constitutional standards are invoked when it can be said that the State is *responsible* for the specific conduct of which the plaintiff complains."

*Brentwood Acad. v. Tennessee Secondary Sch. Ass'n*, 531 U.S. 288, 295 (2001) (internal quotation marks and citation omitted) (alterations in original). "If there is no state action, the inquiry ends." *Emerick v. United Techs. Corp.*, 104 F.3d 353 (2d Cir. 1996).

In the case at hand, in order to hold the SCSPCA, a private entity, liable for the violation of Plaintiff's constitutional rights, Plaintiff must allege facts sufficient to support an inference that the SCSPCA was engaged in state action when Defendants terminated Plaintiff's volunteer position. *See Brentwood Acad.*, 531 U.S. at 298 (holding that assessing whether a private entity's conduct constituted state action is a "necessarily fact-bound inquiry"). "[S]tate action requires *both* an alleged constitutional deprivation caused by the exercise of some right or privilege created by the State or by a rule of conduct imposed by the State or by a person for whom the State is responsible *and* . . . the party charged with the deprivation must be a person who may fairly be said to be a state actor." *American Mfrs. Mut. Ins. Co. v. Sullivan,* 526 U.S. 40, 50 (1999) (internal quotation marks and citation omitted) (emphasis in original). Thus, the first step of the inquiry is "identifying the specific conduct of which the plaintiff complains." *Id.* at 51 (internal quotation marks and citation omitted). Here, the relevant specific conduct is Defendants' alleged employment decisions to demote in rank and thereafter terminate Plaintiff's volunteer position with the SCSPCA in violation of Plaintiff's constitutional rights.

As to the second element of the inquiry, where the defendant is a private entity, a plaintiff must demonstrate that the alleged infringement of federal rights was "fairly attributable to the state." *Tancredi*, 316 F.3d at 312 (internal quotation marks and citation omitted). "For the conduct of a private entity to be fairly attributable to the state, there must be such a close nexus between the [s]tate and the challenged action that seemingly private behavior may be fairly

8

treated as that of the [s]tate itself." *Flagg v. Yonkers Sav. and Loan Ass'n*, 396 F.3d 178, 187 (2d Cir. 2005) (internal quotation marks and citation omitted). Accordingly, "[a] nexus of state action exists between a private entity and the state when the state exercises coercive power, is entwined in the management or control of a private actor, or provides the private actor with significant encouragement, either overt or covert, or when the private actor operates as a willful participant in joint activity with the State or its agents, is controlled by an agency of the State, has been delegated a public function by the state, or is entwined with governmental policies." *Id.* (internal quotation marks and citation omitted). "It is not enough, however, for a plaintiff to plead state involvement in *some activity* of the institution alleged to have inflicted injury upon a plaintiff; rather the plaintiff must allege that the state was involved with the *activity that caused the injury* giving rise to the action." *Sybalski v. Independent Group Home Living Program, Inc.*, 546 F.3d 255, 257-58 (2d Cir. 2008) (internal quotation marks and citation omitted) (emphasis in original).

In the instant matter, Plaintiff does not allude to any state actor participating in the SCSPCA's alleged employment decisions nor does he allege any specific municipal policy that influenced the SCSPCA in demoting and thereafter terminating Plaintiff's volunteer position. Rather, Plaintiff proffers two grounds for construing the SCSPCA's conduct as state action. First, Plaintiff contends that the New York State statutes that establish Societies for the Prevention of Cruelty to Animals ("SCPA") create "quasi-government agencies," such as the SCSPCA, whose actions are committed "under color of state laws." (Compl. ¶¶ 31-35, 61.) Second, Plaintiff contends that in rendering animal control services, members of the SCSPCA's law enforcement division are imbued with official state powers in law enforcement as "peace

9

officers," which are an exclusive government function, and carry on their duties with the State's authority and indicia of state authority. (*Id.* ¶¶ 29, 36-38, 61.)

The SCSPCA is a private, not-for-profit corporation created by the New York State Legislature for the purpose of enforcing New York laws that protect animals. (Compl. ¶¶ 29-35; Ex. A.) Although the SCSPCA may be regulated by the state and therefore some actions taken by its peace officers in performing animal control services or enforcing its regulations might qualify as state action within the meaning of § 1983, *see Horvath v. Westport Library Ass'n*, 362 F.3d 147, 151 (2d Cir. 2004) ("[s]tate action may be found in situations where an activity that traditionally has been the exclusive or near exclusive, function of the State has been contracted out to a private entity"), in the context of making employment decisions or implementing internal personnel policies, the SCSPCA does not perform a governmental function that warrants an inference of state action,[1] *see Blum v. Yaretsky*, 457 U.S. 991, 1004 (1982) (holding that mere fact that entity is subject to state regulation does not by itself convert action into state action; a "sufficiently close nexus between the State and the challenged action . .

---

[1]Plaintiff cites two New Jersey cases, *Mesgleski v. Oraboni*, 330 N. J. Super. 10, 28-29 (App. Div. 2000) and *State v. Vickery*, 275 N. J. Super. 648 (Law Div. 1994), to support his position that the SCSPCA should be considered a "public entity." For the reasons discussed above, the Court finds Plaintiff's reliance on these two New Jersey cases is misplaced. In each of these cases, the court relied on the statutory powers assigned to New Jersey SPCAs under a specific New Jersey statute, and unlike the case at bar which involves the infringement of constitutional rights in the context of employment decisions, the New Jersey cases involved the infringement of New Jersey statutory rights in the context of governmental functions. *See, e.g., Mesgleski v. Oraboni*, 330 N. J. Super. 10, 28-29 (holding a New Jersey SPCA is a "public entity" for purposes of the New Jersey Tort Claims Act where the entity exercised governmental functions and declining to address the constitutional claims as "moot" and "unsustainable" ); *Vickery*, 275 N. J. Super. at 651-53 (holding that where a member of the SPCA operates within the scope of his public duties to perform a governmental function, such actor was a "public servant" for purposes of the New Jersey official misconduct statute).

10

. so that the action . . . may be treated as that of the State itself" is required); *Okon v. Appia*, No. CV-06-6810 (CPS), 2008 WL 2245431, at *13 (E.D.N.Y. May 29, 2008) ("in order for there to be state action based on licensing or regulation, it must be shown that the government commanded or encouraged the alleged wrongdoing"). "[T]he relevant question is not simply whether a private group is serving a public function," . . . but rather "whether the function performed has been traditionally the *exclusive* perogative of the State." *Rendell-Baker*, 457 U.S. at 842 (internal quotation marks and citation omitted) (emphasis in original). Indeed, "[p]ersonnel management is plainly not traditionally within the exclusive province of the state, and is not properly considered a function traditionally associated with sovereignty." *Lown v. Salvation Army, Inc.,* 393 F. Supp. 2d 223, 243 (S.D.N.Y. 2005) (internal quotation marks and citations omitted); *see also Rendell-Baker*, 457 U.S. at 84 ("a State normally can be held responsible for a private decision only when it exercised coercive power or has provided such significant encouragement, either overt or covert, that the choice must in law be deemed to be that of the State") (internal quotation marks and citations omitted); *Trancredi*, 316 F.3d at 313 ("The management of a corporation is not a public function").

The Complaint recounts that the SCSPCA is an agency created under the laws of New York State and that New York statutes authorize SCSPCA members to act as peace officers when providing animal control services and preventing cruelty to animals. Nevertheless, these facts without more do not result in a "sufficiently close nexus" between New York State and Defendants' alleged improper employment practices "so that the actions of the latter may be fairly treated as that of the State itself." *Jackson v. Metropolitan Edison Co.*, 419 U.S. 345, 351 (1974). Defendants' actions cannot constitute state action "merely because . . . a business [is]

subject to extensive state regulation or affected with public interest." *Cranley v. National Life Ins. Co.*, 318 F.3d 105, 112 (2d Cir. 2003) (internal quotation marks and citation omitted).

The SCSPCA is a private employer that operates under its own internal rules and procedures. (Compl., Ex. A.) Significantly, Plaintiff does not allege that the state had any role in Defendants' alleged improper employment decisions. Moreover, that the New York State Legislature created the SCSPCA, a private, not-for-profit corporation, to enforce laws that protect animals and authorized members to act as peace officers, thus subjecting the SCSPCA to regulation by the state, does not mean that Plaintiff's demotion and termination stemmed from a decision made by the state. *See Robbins v. Cloutier,* 121 Fed. Appx. 423, 424, No. 04-1092, 2005 WL 290203, at *1 (2d Cir. Feb. 7, 2005) (summary order) (holding that the "SPCA is under contract with various municipalities to provide animal control services; an independent contractor rendering such services [may be] a state actor within the meaning of § 1983 with respect to the services so provided . . . but that fact does not make a contractor a state actor with respect to its employment decisions") (quoting *Sherlock v. Montefiore Med. Ctr.*, 84 F.3d 522, 527 (2d Cir. 1996) (internal quotation marks omitted)); *Gilfus v. Vargason,* No. 5:04-CV-1379 (HGM/DEP), 2006 WL 2827658, at *4 (N.D.N.Y. Sept. 30, 2006) (same)*; see also Alcena v. Raine*, 692 F. Supp. 261, 267 (S.D.N.Y. 1988) ("There is no basis to impute the actions of the private defendants to the state as there is no evidence the state has intruded into or was even interested in the challenged personnel decisions"); *see also Rendell-Baker*, 457 U.S. at 841-42 (noting that in contrast to the extensive regulation of a private school which had contracted with the state to perform a service that the state was required to provide, "the various regulators showed relatively little interest in the school's personnel matters," and thus concluding that even

12

though the state entity had authority to approve persons hired as vocational counselors, "[s]uch regulation is not sufficient to make a decision to discharge, made by private management, state action"); *Emerick*, 1996 WL 680759, at *1 (finding an insufficient connection to establish that the firing by a private organization with numerous government contracts of an employee who criticized the organization's management constituted state action for § 1983 purposes).

Inasmuch as Plaintiff's allegations are insufficient to connect his employment in a volunteer position with any state action, the SCSPCA's internal employment decisions related to Plaintiff's demotion and termination cannot "be fairly treated as that of the State itself." *Jackson*, 419 U.S. at 351.

### B. Conspiracy to Interfere with Civil Rights Pursuant to Section 1985

Notwithstanding that alleged conduct by a private entity does not amount to state action for purposes of § 1983 liability, the Court recognizes that a private actor may be considered as acting under the color of state law if the private party acted as "a willful participant in joint activity with the State or its agents." *Ciambriello v. County of Nassau*, 292 F.3d 307, 324 (2d Cir. 2002) (internal quotation marks and citation omitted); *see Nealy v. Berger*, No. 08-CV-13222(JFB), 2009 WL 704804, at *5 (E.D.N.Y. March 16, 2009). The elements of a conspiracy claim to interfere with civil rights are: (1) an agreement between two or more state actors or a state actor and a private entity (2) to act in concert to inflict an unconstitutional injury; and (3) an overt act done in furtherance of that goal, and causing some harm. *See Ciambriello*, 292 F.3d at 324-25. Thus, in order "[t]o state a claim against a private entity on a [S]ection 1983 conspiracy theory, the complaint must allege facts demonstrating that the private entity acted in concert with the state actor to commit an unconstitutional act." *Id*.

13

Moreover, "complaints containing only conclusory, vague, or general allegations that the defendants have engaged in a conspiracy to deprive the plaintiff of his constitutional rights are properly dismissed; diffuse and expansive allegations are insufficient, unless amplified by specific instances of misconduct." *Id.* (internal quotation marks and citation omitted).

Here, the Complaint alleges in general terms that "each of the defendants acted under color of state laws." (Compl. ¶ 61.) As discussed above, this Court found that Defendants did not act under color of law when the alleged actions in this case occurred. Nothing in the Complaint alleges that anyone other than Defendants had a role in Plaintiff's termination. The Complaint merely asserts that defendant Lauber engaged in improper employment decisions against Plaintiff, which resulted in his expulsion from the SCSPCA without notice or a hearing, and that the other Defendants were aware that such acts occurred. (*Id*. ¶¶ 71-81.) The Complaint further alleges that Defendants conspired together to deprive Plaintiff "of his right to a hearing, and his rights and interests in his position and membership in the SCSPCA" in violation of the Constitution. (*Id*. ¶ 80.) These vague and conclusory allegations fail to set forth a plausible conspiracy claim under § 1985 as they fail to allege that any of the Defendants are state actors, or that any of the Defendants acted in concert with a state actor to deprive Plaintiff of his constitutional rights.

### C. *Defendants' Alternative Arguments*

In view of the finding that Defendants' actions did not constitute state action for purposes of §§ 1983 or 1985, the Court need not and does not address the alternative arguments advanced by Defendants.

### *CONCLUSION*

For the foregoing reasons, Defendants' motion to dismiss the Complaint is GRANTED and this case is dismissed in its entirety.

**SO ORDERED.**

Dated: Central Islip, N.Y.
June 24, 2009

/S/
Denis R. Hurley,
United States District Judge